

Opinions of the United
States Court of Appeals
for the Third Circuit

1-7-2004

# Burns v. JC Penney Co Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1950

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Burns v. JC Penney Co Inc" (2004). *2004 Decisions.* Paper 1109.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1109

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 03-1950/1951/1952/1953/1954

_____

RONALD BURNS,

Appellant in No. 03-1950

JOE GATTO,

Appellant in No. 03-1951

CLIFFORD BEISEL,

Appellant in No. 03-1952

LARRY BUFALINI,

Appellant in No. 03-1953

JACK ROHLAND,

Appellant in No. 03-1954

v.

J.C. PENNEY COMPANY, INC.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

District Court Judge: The Hon. Arthur J. Schwab
(No. 02cv0332/0333/0334/0335/0336)
_____

Before: ALITO, FUENTES, and ROSENN, <u>Circuit Judges</u>.

(Opinion Filed: January 7, 2004)
_____

OPINION OF THE COURT
_____

FUENTES, <u>Circuit Judge</u>:

In 1988, Defendant-Appellee J.C. Penney ("Penney") created an ERISA benefits plan called the Separation Allowance Program ("SAP"), which granted benefits to eligible employees who lost jobs, salary or status as a result of a "change of control" over Penney. "Change of control" was a term denoting a change in the majority of Penney's Board of Directors or shareholders, i.e., a merger or consolidation. The SAP had a 5-year term, after which Penney could elect to cancel it, or it would otherwise automatically continue for five more years. In 1988, Plaintiffs-Appellants were working in Thrift Drug, a division of Penney; in 1991, however, Thrift Drug was spun off into its own corporation, or became a wholly owned subsidiary of Penney. In early 1997, Penney acquired Eckerd, a drugstore chain, through a triangular merger: namely, Eckerd merged into Omega Acquisition, one of Penney's wholly owned subsidiaries, and Omega was then renamed "Eckerd." Thereafter, Eckerd obtained control of Thrift Drug. In November 1992, less than five years after the SAP was created, Penney's Board of Directors terminated the Plan. In April 1997, Appellants were advised that they would be demoted and receive a pay cut, so they asked for

SAP benefits. They were told, however, that they were not entitled to SAP benefits because their demotions at Eckerd were not a result of any change of control over Penney.

Appellants sued for SAP benefits under ERISA, and the District Court granted summary judgment to Penney against all Appellants. Specifically, the District Court relied on District Court Judge Lee's conclusion in Lettrich v. J.C. Penney Co., Inc., No. 98-137, that the Eckerd acquisition was not a change in control triggering the SAP. Appellants argue that the District Court erred in giving Judge Lee's conclusion preclusive weight, and that the Eckerd acquisition was indeed a change of control. We agree with the District Court that no change of control occurred, and therefore affirm.[1]

The parties agree that Appellants would not receive SAP benefits unless the 1997 merger was a "change of control" under the SAP, because only a change of control would trigger such benefits. SAP ¶ 5, App. at 194. Appellants argue that the 1997 merger qualified as a change of control under the fourth alternate definition given in the SAP, namely: "(d) a merger or consolidation occurs to which [Penney] is a party, whether or not [Penney] is the surviving corporation, in which outstanding shares of [Penney] common stock are converted into shares of another company . . . or other securities (of either [Penney] or another company) or cash or other property." App. at 192. Penney responds that neither component of this definition, Penney being a party nor Penney stock being converted into

_____

[1] Because we affirm the District Court on the merits of Penney's motion, it is unnecessary to reach the issue of whether the District Court gave the Lettrich opinion undue weight.

shares/securities, was satisfied by the 1997 merger.

On the "party" issue, the merger documents support Penney's assertion. It is true, as Appellants argue, that the merger *agreement* was executed by Penney, Omega and Eckerd, App. at 209, but the actual certificate of merger itself only lists Omega and Eckerd as parties. App. at 316. Moreover, even the merger agreement's description of the merger, found at §2.1, establishes that the merger had only two parties: "Company [Eckerd] shall be merged with and into Purchaser [Omega] at the Effective Time." App. at 212. Neither the certificate of merger nor § 2.1 of the merger agreement, which actually describes the merger, make any mention of Penney as a party to the 1997 merger. Appellants contend that, even though the 1997 merger was nominally a transaction between Eckerd and Omega, Penney was "a party" to the 1997 merger because Penney fits the dictionary definition of "party." Appellants' reliance on the definition of "party" from Black's Law Dictionary (7th Ed. 1999) is unavailing because the definition–"one who takes part in a transaction"–does not provide any guidance: specifically, it begs the question of whether Penney "took part in" the 1997 merger. The dictionary definition, therefore, does not disturb the merger documents' illustration of the 1997 merger as one between Omega and Eckerd, to which Penney was not a party.

Even if Penney was a party, there was no change of control because Penney stock was not converted in the manner described in the SAP. In the 1997 merger, Penney bought common stock from its shareholders, retired (i.e., destroyed) those shares, issued new shares, and exchanged the new shares for Eckerd common stock. Appellants argue that Penney's retirement and issuance of shares amounted to a conversion of Penney common stock for

Penney common stock, satisfying the conversion element of "change of control." Appellants' argument fails for two reasons. First, Penney did not convert its common stock into common stock at all; rather, in two separate transactions, Penney destroyed one set of shares and issued a brand new set of shares.

Second, even if there was a conversion of sorts, it was not a conversion "into shares of another company . . . or other securities (of either [Penney] or another company)." App. at 170. The SAP did not count conversions of Penney stock into shares of Penney as one of the qualifying conversions; instead, a change of control would only be triggered if Penney stock was converted into some other company's stock or into non-stock securities of Penney or another company. If the SAP had contemplated Penney-stock-to-Penney-stock conversions, it would have read "into shares of *Penney or* another company" rather than "into shares of another company." Finally, the purchase of Eckerd shares with Penney shares also does not qualify the 1997 merger as a change of control: by the end of the transaction when Eckerd shares had become worthless, Appellee had effectively converted its stock into nothing of value. In other words, Appellee's stock was not really converted at all, but used to purchase control of Eckerd. In short, neither of the elements of change of control were met by the 1997 merger. Accordingly, we affirm the District Court's judgment.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.


                                              /s/ Julio M. Fuentes
                                              Circuit Judge